# IN THE COURT OF APPEALS OF IOWA

No. 20-1436
Filed March 17, 2021

**IN THE INTEREST OF S.C. and S.C.,**
**Minor Children,**

**S.P., Mother,**
    Appellant,

**C.C., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

The mother of two children and the father of the older child separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Jeremy M. Evans of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Cole J. Mayer of Macro & Kozlowski, L.L.P., West Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kayla A. Stratton of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children.

Considered by May, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

The mother of two children, born in 2016 and 2018, appeals the termination of her parental rights.  The father of the older child separately appeals the termination of his parental rights.[1]  The mother and father each claim the State failed to prove the statutory grounds cited by the juvenile court to terminate their parental rights and termination of their rights is not in the best interests of their respective child or children.  Because of their strong bond, the father also contends a statutory exception should be applied to save the parent-child relationship. Alternatively, the father requests another six months as an alternative to termination or that the guardianship and custody of the child be transferred to the paternal grandfather in Colorado.

**I. Facts and Earlier Proceedings.**

This family came to the attention of the Iowa Department of Human Services (DHS) in November 2018, when the younger child tested positive for THC at birth. In July 2019, the mother was accused of using methamphetamine while caring for the children, prompting DHS to open an investigation.  A month later the children were removed from the parents' care due to an allegation that the father assaulted the mother.[2]  The father was arrested as a result of the assault allegation.  The

---

[1] Paternity testing revealed the father is not the biological father of the younger child.  The biological father of the younger child was not determined, but the juvenile court terminated the rights of an unknown or putative father.  No father appeals the termination of his rights to the younger child.  Any reference to "the father" in this opinion is a reference to the older child's father.

[2] Removal was uncontested by both parents.  The district court found the following at the removal hearing:

> There is substantial evidence to support the allegations in the removal application.  The children's lives or health would be in imminent danger if returned to the . . . parent[s] because [the younger

charges were later dismissed, but the father stipulated to a probation violation and was jailed in Polk County from August to December 2019.

The children were adjudicated children in need of assistance (CINA) in September 2019, pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2019). The mother and father did not contest adjudication. An uncontested disposition hearing was held in November 2019, and the court continued placement of the children with a DHS approved caretaker. In December 2019, the children's placement was modified, and the children were transferred to a foster home where they have remained throughout these proceedings. A review hearing was held in January 2020. At this point the father was out of jail, sober, and working. The mother had ceased substance-abuse treatment at House of Mercy but indicated she intended to reengage. A permanency hearing was scheduled for late March 2020. In the following months the father obtained a court-ordered mental-health evaluation and attended several therapy sessions.

Days before the scheduled permanency hearing, both parents were attending a visit with the children at the House of Mercy. While the mother was inside, the father was shot at outside the facility, but he avoided injuries. Although the mother was also receiving substance-abuse treatment at the House of Mercy prior to the shooting, she was not allowed to return due to safety concerns. As a result, the permanency hearing was continued. In April, the father was shot and

---

child] was born positive for marijuana. The family was offered DHS eligible services to address the . . . mother's marijuana usage. The mother has continued to use marijuana and has tested positive for methamphetamine. Additionally, the father . . . assaulted the mother while the children were present. He is currently at the Polk County Jail.

hospitalized. The father maintained the shootings were random, yet it was later discovered that the mother knew an individual arrested in connection with the shooting. After being released from the hospital, the father decided to move to Colorado to stay with family and recuperate from his injuries. The juvenile court ordered an ICPC[3] study to evaluate whether the older child's paternal grandfather, who resided in Colorado, was a suitable placement option.

A review hearing was held in early June 2020. The mother still needed substance-abuse treatment and was seeking alternatives to treatment at House of Mercy. Following the hearing, the State filed petitions to terminate the mother's and father's rights. The two-day termination hearing took place on September 3 and October 2.

At the termination hearing, the evidence presented addressed the mother's unresolved barriers to successful parenthood. Those main concerns centered on the mother's chronic substance abuse. Between removal of the children in August 2019 and the termination hearing, the mother received three substance-abuse evaluations. She was diagnosed with severe amphetamine-type and cannabis use disorders with a recommendation for residential treatment. Although she attempted residential treatment, the mother failed to ever complete it. Up to the time of the termination hearing, the mother continued to use methamphetamine and marijuana. In May 2020, she was arrested and charged with felony drug distribution. At the end of that month, she again stopped attending treatment, continuing her inconsistent track record of treatment. She did not maintain sobriety

---

[3] Interstate Compact on the Placement of Children.

for a meaningful length of time. She also did not engage in mental-health services to treat her history of trauma and substance abuse. The mother's inconsistency also extended to visits with her children; at the time of termination, she had attended only half the visits offered.

Issues involving the father's ability to parent were different from those of the mother. His history contained incidents of domestic violence and anger-control issues. He was arrested twice in 2019, once for an assault causing injury to the mother's sister and a second time for domestic abuse assault of the mother. Both assaults occurred in the presence of the children. The first assault resulted in a founded child abuse assessment against the father for denial of critical care. The second assault led to removal of the children and a four-month stint in jail for the father's probation violation. DHS advised the father to engage in therapy services to address domestic violence and anger management in Colorado after he moved there in April 2020. He completed an intake at the Mental Health Center of Denver and attended one session to work on anger management, coping skills, and stress management, although he declined to discuss domestic violence issues. The father consistently refused to address his history of domestic violence and, at the termination hearing, he continued to deny ever assaulting the mother or her sister. After his release from jail, the father struggled to maintain stable housing. Excluding the time spent in jail and recovering from the shooting, the father worked but jumped from job to job. Before he returned to Iowa in October 2020, he voiced concerns about his mental, financial, and housing stability to the ICPC coordinator in Colorado. He also consistently attended visits with the children, whether in

person or by video, and has been sober since his release from jail in December 2019.

The court issued its termination order in October 2020, terminating the father's parental rights to the older child under Iowa Code section 232.116(1)(h) (2020) and terminating the mother's parental rights to both children under 232.116(1)(h) and (*l*). Both parents appeal this decision.

## II. Standard of Review.

We review termination-of-parental-rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary concern, as always, is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis.

> Termination under chapter 232 follows a three step analysis. First, the court must determine whether a ground for termination under section 232.116(1) has been established. If a ground for termination is established, the court must, secondly, apply the best interest framework as set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. Third, if the statutory best-interest framework supports termination of parental rights, the court must consider if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights.

*In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010) (citations omitted). Under that framework, we address each parent and the requests developed in each appeal.

### A. Statutory Grounds.

Both parents challenge the statutory grounds for termination relied on by the juvenile court. When the juvenile court terminates on more than one ground, as it did the mother's rights, we need to find only one ground supported by clear and convincing evidence to affirm. *See id.* at 707. Because the juvenile court

relied on paragraph (h) as to both parents, we choose to focus on it. Section 232.116(1)(h) provides for termination of parental rights where:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance . . . .
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months . . . .
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Neither parent contests the first three elements of 232.116(1)(h) were met. But as to the fourth element, they each assert the State failed to prove their respective child or children could not be returned to their care at the time of the termination hearing.

Turning first to the mother, she openly acknowledges her struggles with substance abuse and her mental health. She points to her three separate substance -abuse evaluations as proof of her desire to seek help. Then she argues the shooting outside the House of Mercy complicated her efforts to receive treatment. But she has not actually completed any of the treatment programs she started. Still, she maintains the children could be returned to her care at the time of the termination hearing. While a substance-abuse evaluation is the first step in addressing her issues, the mother has struggled to follow through with any other steps. Completing treatment and existing without drugs in her life had to occur here. The mother admits she continued to use methamphetamine and marijuana throughout the pendency of these cases. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. January 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."). Then, just four months

before the termination hearing, the mother was arrested for felony drug distribution. Without proof of progress, the mother's history compels a termination of her parental rights. *See In re L.L.*, 459 N.W.2d 489, 493–94 (Iowa 1990) (raising concern that a parent's past performance may indicate the quality of care of a parent in the future).

On top of the substance-use concerns, the mother's visits with the children became less frequent and she never progressed to a stage where she had unsupervised visitation. Her stability remained uncertain. She was unable to overcome her addiction and show she could be a suitable caretaker for the children by the time of the termination hearing. *See D.W.*, 791 N.W.2d at (interpreting "at the present time" to mean "at the time of the termination hearing"). Both children were three or younger at the time of the termination hearing and had been removed from the mother's care for over a year. They deserve permanency. "Children cannot simply wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable." *L.L.*, 459 N.W.2d at 495. The mother, who has struggled with addiction for most of her adult life, continued to do so at the time of the termination hearing. Thus, we find clear and convincing evidence of grounds for termination of the mother's rights under Iowa Code section 232.116(1)(h).

As to the father, he counters the juvenile court's concerns over his housing and employment instability and his unresolved domestic violence propensities. While the father frequently changed jobs, he emphasizes that he remained employed absent the time he was jailed or recuperating from his shooting injuries. At the September hearing, the father was living in Colorado, but at the October hearing he maintained he had stable housing with a female friend in Iowa.

Addressing the domestic assault concerns, the father adamantly denied assaulting the mother or her sister and contended the January review order noted his counselor did not require him to address anger or domestic assault concerns. Finally, it is true, as he notes, there were no concerns raised about his parenting skills or the attachment with his child.

If we view the facts through the father's lens, we might agree he should retain parental rights to his child. But we conduct a de novo review. In that review, the stable housing described by the father is far from that. Without telling DHS about the move, within the month between hearings in the termination trial, the father moved in with a women who has a criminal history involving drugs. The father called the recent housing "short-term." While in Colorado, the father told the ICPC investigator that he did not want to be a placement option for his child. In the September termination hearing, when asked what he wanted the court to do, he said, "Pretty much allocate parental rights to my dad. Give the kids to him on the contingency that I continue to get my stuff right and get stable placement because I was already on the track of doing that. I'm still on the track of doing that." This history fails to demonstrate stability. Given the young age of this child, the legislature crafted a six-month limitation for parents to remedy a lack of parenting skills. *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Similar to *In re Z.P.,* where the father alleged his "mistakes" did not rise to the level to require termination, the father here believes he is ready and able to be a full-time parent. 948 N.W.2d 518, 523–24 (Iowa 2020) (finding termination appropriate where after statutory time frame ended, there was still not a plan in place to make a safe home for the young child). While well intentioned, this father spent only four of the many

months this child remained in foster care in the same state. At the time of the termination hearing, visits remained supervised. There was no plan to meet the child's basic needs of housing, let alone the day-to-day demands of being a parent.

Finally, on the topic of domestic violence, the court stated:

[The father] still denies assaultive behavior towards [the mother] or her sister. That denial is inconsistent with the evidence before this court. Until [the father] honestly and meaningfully addresses his role in domestic violence and addresses his anger issues, the children continue to be at risk of exposure to violence.

Contrary to the father's assertions, the juvenile court found evidence to support the mother's later retracted domestic assault allegation.[4] The juvenile court also expressed concern that the child could be exposed to ongoing violence, considering the father was a victim of multiple unsolved shootings and was not forthcoming about all of the details of the shootings.

Overall, we agree with the juvenile court that the father was not equipped to have the older child returned to him at the time of the termination hearing. Thus, we find clear and convincing evidence supports termination of the father's parental rights under Iowa Code section 232.116(1)(h).

**B. Best Interests.**

Having found the State proved grounds for termination as to both parents under section 232.116(1)(h), we must now decide whether termination is in the best interests of the children. *See D.W.*, 791 N.W.2d at 708. "In deciding whether to terminate parental rights . . . we must give primary consideration to the

---

[4] In the assault of the sister, she claims the father broke her nose. The mother did retract her statement about the assault on her and the father pulling her hair out. But, the police found a section of the mother's hair on the father's shorts at the time of the assault.

'child[en]'s safety, . . . the best placement for furthering the long-term nurturing and growth of the child[ren], and . . . the physical, mental, and emotional condition and needs of the child[ren].'"   *Id.* (alteration in original) (quoting Iowa Code § 232.116(2)).

At the time of the termination hearing, these children—at the tender ages of one and three—had been out of the parents' care for over a year.  To support her best-interest argument, the mother asserts she has a strong bond with the children and they are "the focal point of her life."  Yet, the mother did not complete any substance-abuse treatment and continued to use methamphetamine and marijuana.  She also attended only half the offered visits with her children prior to the termination hearing.  Her choices do not support her contention that she wants to be free from drugs or that her children are her top priority.

As to the father, he has a history of domestic violence with the mother and continues to deny his role in assaults his child witnessed.  Over the course of these proceedings he still has not obtained stable housing or even come close to day-to-day parenting of this child.  As the juvenile court stated in its termination order,

> [C]hildren need a long term commitment from a parent to be appropriately nurtured, supportive of their growth and development, and who can meet their physical, mental, emotional, and safety needs.  No parent has demonstrated they are willing or able to fulfill this parental role.  [The mother] has been unable to address her substance abuse and continues to use illegal substances.  [The father] has not meaningfully engaged in services to address the domestic violence that he exposed his children to.  Neither parent demonstrates stability in their day-to-day lives.  It is not in these children's best interests to continue to suspend the crucial days of childhood while the parents experiment with ways to face up to their own problems.

This child and the sibling have a strong bond and deserve permanency. The father has not placed his child's growth and development in a position of importance. It is in the child's best interest to have stability and both of the children here can have that as siblings in an adoptive home. *See In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) ("Children simply cannot wait for responsible parenting.").

We agree with the juvenile court and find it is in the best interests of the children to terminate the mother's and father's parental rights.

### C. Statutory Exceptions.

Finally, we address whether any exceptions apply under Iowa Code section 232.116(3) to preclude termination.[5] While a finding of an exception avoids a termination of parental rights, we note the factors are "permissive, not mandatory. *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). The father emphasizes his strong bond with this child and cites evidence that the child required therapy after their visits transitioned to electronic means to support the exception. Under the exception at section 232.116(3)(c), a court need not terminate the parent-child relationship if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The juvenile court declined to apply the exception under section 232.116(3)(c), finding termination is in the child's best interest. We agree. Both children are currently together in foster care. We believe it would cause further

---

[5] The juvenile court addressed the father's alternate request to remove the child to the paternal grandfather as an argument for an exception under Iowa Code section 232.116(3)(a). But the paternal grandfather did not have legal custody of the child, so the exception was not applicable.

destabilization to separate them when one of the only constants in their short lives has been the presence of the other.

**D. Request for Additional Time or Custody and Guardianship with the Paternal Grandfather.**

As an alternative route, the father requested another six months to address any stability concerns of the juvenile court. The legislature's established time frame for parents to show their ability to be parents mitigates against the request. *See J.E.*, 723 N.W.2d at 800. Here the father had over a year to demonstrate his abilities, and that failed history does not allow for confidence that another six months will change this outcome.

Finally, the father argues for establishing a guardianship with the grandfather in Colorado in lieu of terminating the father's rights. *See* Iowa Code §§ 232.117(5) (permitting the option of entering a permanency order pursuant to section 232.104 if the court does not terminate parental rights); 232.104(2)(d) (allowing the court to enter a permanency order transferring guardianship and custody or the child). We note the paternal grandfather in Colorado submitted to an ICPC study to explore adoption of the child. But "a guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). Placing the child in DHS custody for pre-adoptive care does not preclude the grandfather from eventually being able to adopt the child. We leave the question of whether the child should be with the paternal grandfather to the adoptive process.

**IV. Conclusion.**

For all the reasons stated above, we affirm the district court's order terminating the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**